CASE NO. 24-13896-F

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

**PEN AMERICAN CENTER, INC., et al.,**

**Plaintiffs-Appellees,**

**v.**

**ESCAMBIA COUNTY SCHOOL BOARD,**

**Defendant-Appellant.**

---

Appeal from the United States District Court
for the Northern District of Florida

---

**PLAINTIFFS/APPELLEES' BRIEF IN RESPONSE TO INITIAL BRIEF OF DEFENDANT/APPELLANT ESCAMBIA COUNTY SCHOOL BOARD AND NONPARTIES KEVIN ADAMS, PAUL FETSKO, PATTY HIGHTOWER, WILLIAM SLAYTON, AND DAVID WILLIAMS**

---

Lynn B. Oberlander
Matthew G. Kussmaul
**BALLARD SPAHR LLP**
1675 Broadway, 19th Floor
New York, NY 10019-5820
Telephone: 212.223.0200
Facsimile: 213.223.1942

Shalini Goel Agarwal
Ori Lev
**PROTECT DEMOCRACY PROJECT**
2020 Pennsylvania Ave. NW, Suite 163
Washington, DC 20006
Telephone: 202.579.4582
Facsimile: 939.777.8428

**Attorneys for Appellees**

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for Appellees hereby certifies that the Certificate of Interested Persons attached to Defendants' Brief is complete and accurate, except as added or modified below.

1.    BVG-Stiftung. Shareholder of Bertelsmann SE & Co. KGaA.

2.    Smith, Carin. Former Plaintiff, on behalf of herself and her minor children, in underlying case. (Correction to Appellants' CIP ¶ 80.)

### CIP CERTIFICATION

Counsel of record for Appellees, pursuant to 11th Circuit Rule 26.1-3(b), hereby certify that no publicly traded company or corporation has an interest in the outcome of the case or appeal.

**STATEMENT REGARDING ORAL ARGUMENT**

Appellees respectfully submit that oral argument would aid the Court in the decision process by enabling the Parties to address any questions concerning the applicability of the legislative privilege in this case.

## **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ...............................................................C-1

CIP CERTIFICATION ........................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CITATIONS ........................................................................v

STATEMENT OF JURISDICTION.................................................... xiii

STATEMENT OF THE ISSUES.....................................................1

STATEMENT OF THE CASE .....................................................2

I.    NATURE OF THE CASE ..................................................2

II.   STATEMENT OF THE FACTS ...........................................4

III.  COURSE OF PROCEEDINGS.........................................6

IV.   STANDARD OF REVIEW............................................9

SUMMARY OF THE ARGUMENT .....................................9

ARGUMENT ...........................................................12

I.    THE COURT DOES NOT HAVE JURISDICTION OVER THIS
      INTERLOCUTORY APPEAL BECAUSE APPELLANTS DO
      NOT HAVE APPELLATE STANDING AND THE NARROW
      EXCEPTION FOR COLLATERAL ORDERS DOES NOT
      APPLY...................................................................12

      A.    Appellate Standing Standards ...........................................12

      B.    The Board Lacks Standing To Bring This Interlocutory
            Appeal.....................................................................13

      C.    *Hubbard* Does Not Support Jurisdiction in this Case .........................14

      D.    The Individual Board Members Lack Standing to Appeal .................15

    1.    The Board Members Did Not Participate in the District Court Proceedings ........................................................ 15

    2.    Participation in the District Court Must Be Active and Substantial .......................................................... 17

II.    THE DISTRICT COURT APPLIED THE PROPER STANDARD OF REVIEW ....................................................................... 19

    A.    The "Contrary to Law" Standard Means *De Novo* Review of Legal Conclusions ............................................. 20

    B.    Even the Deferential Abuse of Discretion Standard Contemplates *De Novo* Review for Questions of Law ....................... 23

    C.    Canons of Statutory Interpretation Support Distinct Standards for "Clearly Erroneous" and "Contrary to Law" in Rule 72(a) and § 636(b)(1)(A) ....................................... 25

    D.    The Board's Interpretation of Case Law Does Not Warrant Overturning the District Court's Legal Findings ................. 26

        1.    The Board Incorrectly Interprets *Merritt* ................................ *26*

        2.    The Board's Reliance on District Court Decisions Is Misplaced ................................................................. 28

    E.    The District Court Sufficiently Explained Why the Magistrate Judge's Conclusion Was Contrary to Law ....................... 31

III.    THE DISTRICT COURT CORRECTLY HELD THAT THE DECISION TO REMOVE A PARTICULAR BOOK FROM SCHOOL LIBRARIES IS ADMINISTRATIVE ................................ 34

    A.    The Applicable Legal Standard Focuses on Whether an Act Is Policymaking (Legislative) or Applying an Existing Policy (Administrative) ....................................... 34

    B.    The Decision to Remove a Particular Book from School Libraries is Administrative ............................................. 36

    C.    The Board's Arguments to the Contrary Are Unavailing ................. 39

1.      The Board's Hodgepodge 'Factors' Fail ...................................39

2.      *Crymes* Is Binding Precedent.....................................................43

3.      The Board misunderstands *Ellis* ...............................................48

CONCLUSION .........................................................................................52

CERTIFICATE OF COMPLIANCE.........................................................53

CERTIFICATE OF SERVICE ..................................................................54

## TABLE OF CITATIONS

**Page(s)**

**Cases**

*In re 3M Combat Arms Earplug Products Liability Litigation*,
No. 3:19md2885, 2022 WL 2436843 (N.D. Fla. Mar. 11, 2022) ................21, 33

*75 Acres, LLC v. Miami-Dade County*,
338 F.3d 1288 (11th Cir. 2003) .............................................................43, 44, 47

*ACLU of Florida, Inc. v. Miami-Dade County School Board*,
557 F.3d 1177 (11th Cir. 2009) ........................................................................2

*Bales v. Bright Solar Marketing LLC*,
No. 5:21-cv-00496-MMH-PRL, 2023 WL 2553953
(M.D. Fla. Mar. 17, 2023) ................................................................................30

*Barron v. EverBank*,
No. 1:16-CV-4595-AT, 2019 WL 1996697 (N.D. Ga. Mar. 15,
2019) .............................................................................................................29, 30

*Baytree of Inverrary Realty Partners v. City of Lauderdale*,
873 F.2d 1407 (11th Cir. 1989) .....................................................................46, 47

*Bisig v. Time Warner Cable, Inc.*,
940 F.3d 205 (6th Cir. 2019) .............................................................................22

*Bogan v. Scott-Harris*,
523 U.S. 44 (1998) .........................................................................................40, 41

*Boldstar Technical, LLC v. Home Depot, Inc.*,
No. 07–80435–CIV, 2008 WL 9907300 (S.D. Fla. Apr. 14, 2008) ............29, 30

*Brown v. Crawford County*,
960 F.2d 1002 (11th Cir. 1992) ...........................................8, 35, 37, 38, 43, 45

*Brunson v. PHH Mortgage Corp.*,
342 F.R.D. 315 (M.D. Fla. 2022) .......................................................................7

*Bryant v. Jones*,
575 F.3d 1281 (11th Cir. 2009) ......................................................36, 37, 38, 51

*Captiva Lake Investments, LLC v. Fidelity National Title Insurance Co.*,
    883 F.3d 1038 (8th Cir. 2018) ............................................................24

*Citibank International v. Collier-Traino, Inc.*,
    809 F.2d 1438 (9th Cir. 1987) ...........................................................18

*Code Revision Commission for General Assembly of Georgia v.*
    *Public.Resource.Org, Inc.*,
    906 F.3d 1229 ....................................................................................51

*Common Cause Florida v. Byrd*,
    674 F. Supp. 3d 1097 (N.D. Fla. 2023) ............................................34

*Corn v. City of Lauderdale Lakes*,
    997 F.2d 1369 (11th Cir. 1993) ......................... 38, 40, 41, 42, 43, 47

*Crymes v. DeKalb County, Georgia*,
    923 F.2d 1482 (11th Cir. 1991) ......... 8, 34, 35, 37, 38, 40, 41, 42, 43, 45, 47, 49

*Curling v. Secretary of Georgia*,
    761 F. App'x 927 (11th Cir. 2019) ....................................................43

*Curtis v. Des Moines*,
    995 F.2d 125 (8th Cir. 1993) .............................................................18

*DeKalb Stone, Inc. v. County of DeKalb, Georgia*,
    106 F.3d 956(11th Cir. 1997) ...........................................................43

*El-Saba v. University of Southern Alabama*,
    No. 15-00087-KD-N, 2016 WL 11700794 (S.D. Ala. Aug. 15, 2016)..............30

*Ellis v. Coffee County Board of Registrars*,
    981 F.2d 1185 (11th Cir. 1993) ......................... 20, 43, 48, 49, 50, 51

*Factory Direct Tires Inc. v. Cooper Tire & Rubber Co.*,
    No. 3:11-cv-255-RV/EMT, 2012 WL 12873552 (N.D. Fla.
    July 27, 2012)................................................................................29, 30

*Featherston v. Metropolitan Life Insurance Co.*,
    223 F.R.D. 647 (N.D. Fla. 2004)..................................................29, 30

*Felzen v. Andreas*,
    134 F.3d 873 (7th Cir. 1998) .............................................................19

*Fernandez v. RentGrow, Inc.*,
116 F.4th 288 (4th Cir. 2024) ...............................................................24

*Finn v. Cobb County Board of Elections & Registration*,
111 F.4th 1312 (11th Cir. 2024) ......................................12, 13, 17, 19

*Fisher v. Ciba Specialty Chemicals Corp.*,
No. 03-0566-WS-B, 2007 WL 987457 (S.D. Ala. Mar. 30, 2007) .............29, 30

*Fox Haven of Foxfire Condominium IV Association v. Nationwide
Mutual Fire Insurance Co.*,
No. 2:13-cv 399-FtM-29CM, 2014 WL 7405758 (M.D. Fla. Dec.
30, 2014) .....................................................................................30

*Fox v. Acadia State Bank*,
937 F.2d 1566 (11th Cir. 1991) ...........................................................28

*Fuller v. Carollo*,
No. 21-11746, 2022 WL 333234 (11th Cir. Feb. 4, 2022).....................35, 43, 47

*Fund Liquidation Holdings LLC v. Bank of America Corp.*,
991 F.3d 370 (2nd Cir. 2021) ..............................................................24

*Gomez v. City of Miami*,
No. 23-13364, 2024 WL 4369605 (11th Cir. Oct. 2, 2024) ..............................51

*Graham v. Mukasey*,
247 F.R.D. 205 (D.D.C. 2008) .............................................................29

*Grimes v. City and County of San Francisco*,
951 F.2d 236 (9th Cir. 1991) .........................................................28, 31

*Gupta v. U.S. Attorney General*,
No. 6:13-cv-1027-Orl-40KRS, 2015 WL 5687829 (M.D. Fla. Sept.
25, 2015) .....................................................................................29

*Habelt v. iRhythm Technologies, Inc.*,
83 F.4th 1162 (9th Cir. 2023) .............................................................18

*Haines v. Liggett Group, Inc.*,
975 F.2d 81 (3d Cir. 1992) ................................................................21

*Haitian Refugee Ctr. v. Baker*,
   953 F.2d 1498 (11th Cir. 1992) ..........................................................................22

*Hasbrouck v. BankAmerica Housing Services, Inc.*,
   190 F.R.D. 42 (N.D.N.Y. 1999) ....................................................................29, 30

*Hernandez v. City of Lafayette*,
   643 F.2d 1188 (5th Cir. Unit A 1981) ..........................................................39, 50

*In Re Hubbard*,
   803 F.3d 1298 (11th Cir. 2015) .............................................................13, 14, 15

*In re Grand Jury Proceedings*,
   563 F.2d 577 (3d Cir. 1977) ...............................................................................13

*Hughes v. Tarrant County Texas*,
   948 F.2d 918 (5th Cir. 1991) ........................................................................35, 46

*Illoominate Media, Inc. v. CAIR Florida, Inc.*,
   No. 22-10718, 2022 WL 4589357 (11th Cir. Sept. 30, 2022)......................20, 21

*Israel v. DeSantis*,
   4:19cv576, 2020 WL 2129450 (N.D. Fla. May 5, 2020) .............................40, 46

*Kentner v. City of Sanibel*,
   750 F.3d 1274 (11th Cir. 2014) ..........................................................................43

*Khoury v. Miami-Dade County School Board*,
   4 F.4th 1118 (11th Cir. 2021) ...............................................................................9

*Kimberly Regenesis, LLC v. Lee County*,
   64 F.4th 1253, 1259 (11th Cir. 2023) ................................... 12, 13, 15, 16, 17, 19

*Koon v. United States*,
   518 U.S. 81 (1996)...............................................................................................23

*Leo v. Alfa Mutual Insurance Co.*,
   No. 1:13-CV-1826-VEH, 2014 WL 12919434 (N.D. Ala. June
   6, 2014) ........................................................................................................29, 30

*Lewis v. Brown*,
   409 F.3d 1271 (11th Cir. 2005) ..........................................................................43

*Macuba v. Deboer*,
193 F.3d 1316 (11th Cir. 1999) .............................................................51

*Malibu Media, LLC v. Doe*,
923 F. Supp. 2d 1339 (M.D. Fla. 2013)......................................30, 33

*Marino v. Ortiz*,
484 U.S. 301 (1988)..........................................................12, 13, 19

*Mastroianni v. Bowers*,
173 F.3d 1363 (11th Cir. 1999) .............................................................51

*McCarthan v. Director of Goodwill Industry Suncoast, Inc.*,
851 F.3d 1076 (11th Cir. 2017) .............................................................25

*McGrain v. Daugherty*,
273 U.S. 135 (1927)..........................................................49, 50

*Merck Sharp & Dohme Corp. v. Actavis Laboratories FL, Inc.*,
No. 15-6541 (WHW)(CLW), 2017 WL 2959241 (D.N.J. July 10, 2017) .........31

*Merritt v. International Brotherhooda of Boilermakers*,
649 F.2d 1013 (5th Cir. 1981) .............................................................26, 27

*Mohawk Industries, Inc. v. Carpenter*,
558 U.S. 100 (2009)..........................................................14, 15

*Moore v. Cecil*,
109 F.4th 1352 (11th Cir. 2024) .............................................................28

*Moore v. Ford Motor Co.*,
755 F.3d 802 (5th Cir. 2014) .............................................................22, 27

*Osband v. Woodford*,
290 F.3d 1036 (9th Cir. 2002) .............................................................22, 28

*Patton v. Johnson*,
915 F.3d 827 (1st Cir. 2019).............................................................26

*In re Pons*,
614 F. Supp. 3d 1134 (S.D. Fla. 2020) .............................................................31

*PowerShare, Inc. v. Syntel, Inc.*,
    597 F.3d 10 (1st Cir. 2010) ........................................................21, 26

*Quint v. Vail Resorts, Inc.*,
    89 F.4th 803 (10th Cir. 2023) ...............................................................22

*Rzepokoski v. Nova Southeastern University, Inc.*,
    No. 22-cv-61147-WPD, 2024 WL 4003687 (S.D. Fla. Apr. 14, 2024) ............30

*Santiago v. Lizenbee*,
    No. 3:23-cv-211-MMHLLL, 2024 WL 3161836 (M.D. Fla. June
    25, 2024) .................................................................29, 30, 31

*Santos v. Healthcare Revenue Recovery Group, LLC*,
    90 F.4th 1144 (11th Cir. 2024) .............................................................25

*Scott v. Taylor*,
    405 F.3d 1251 ...................................................................................51

*SEC v. Charnas*,
    717 F. Supp. 3d 1233 (S.D. Fla. 2024) ...............................................29

*SEC v. Wencke*,
    783 F.2d 829 (9th Cir. 1986) ..............................................................18

*Shabazz v. Schofield*,
    No. 3:13-CV-00091, 2014 WL 6605504 (M.D. Tenn. Nov. 19, 2014) ............31

*Skanska USA Civil Southeast Inc. v. Bagelheads, Inc.*,
    75 F.4th 1290 (11th Cir. 2023) ...........................................................24

*Sky Cable, LLC v. DIRECTV, Inc.*
    886 F.3d 275 (4th Cir. 2018) ..............................................................17

*Smith v. Lomax*,
    45 F.3d 402 (11th Cir. 1995) ................... 35, 37, 39, 40, 41, 42, 43, 45

*Smith v. Shook*,
    237 F.3d 1322 (11th Cir. 2001) ...........................................................51

*Tenney v. Brandhove*,
    341 U.S. 367 (1951) ...........................................................................50

*Texas Brine Co., LLC v. Occidental Chemical Corp.*,
879 F.3d 1224 (10th Cir. 2018) .......................................................17

*Tracy P. v. Sarasota County*,
No. 8:05CV927T27EAJ, 2007 WL 1364381 (M.D. Fla. May 9, 2007) ...........30

*United States v. Ballard*,
885 F.3d 500 (7th Cir. 2018) ...............................................24

*United States v. Caraballo-Martinez*,
866 F.3d 1233 (11th Cir. 2017) .......................................27

*United States v. DAS Corp.*,
18 F.4th 1032 (9th Cir. 2021) .......................................24, 28

*United States v. Delgado-Nunez*,
295 F.3d 494 (5th Cir. 2002) ...............................................24

*United States v. Fluitt*,
99 F.4th 753 (5th Cir. 2024) ...............................................18

*United States v. Futrell*,
209 F.3d 1286 (11th Cir. 2000) .......................................21

*United States v. Kpodi*,
888 F.3d 486 (D.C. Cir. 2018) ...............................................24

*United States v. Shamsid-Deen*,
61 F.4th 935 (11th Cir. 2023) ...............................................22

*United States v. Walden*,
No. 03-20566-CR, 2003 WL 27385605 (S.D. Fla. Dec. 10, 2003) .............29, 30

*Villiage Spires Condominium Association v. QBE Insurance Corp.*,
No. 06-14191, 2008 WL 11408524 (S.D. Fla. Jan. 15, 2008) ....................29, 30

*WasteCare Corp. v. Harmony Enterprises*,
822 F. App'x 892 (11th Cir. 2020) ...............................................24

*Woods v. Gamel*,
132 F.3d 1417 (11th Cir. 1998) ................................ 35, 37, 38, 41, 42, 43, 45, 51

xi

*Yeldell v. Cooper Green Hospital, Inc.*,
  956 F.2d 1056 (11th Cir. 1992) .......................................... 34, 36, 39, 40, 41, 50

**Statutes**

28 U.S.C. § 636 ..................................................................................20, 25

28 U.S.C. §1291 ........................................................................................14

**Other Authorities**

Black's Law Dictionary 44 ........................................................................44

Black's Law Dictionary 1157 ....................................................................37

11th Cir. R. 36-2 .......................................................................................21

Fed. R. App. P. 32.1 ..................................................................................21

Fed. R. Civ. P. 26 ......................................................................................18

Fed. R. Civ. P. 37 ........................................................................................8

Fed. R. Civ. P. 72 ................................................ 8, 9, 10, 20, 21, 25, 26

Wright & Miller, *Federal Practice and Procedure* § 2103 .......................8

## <u>STATEMENT OF JURISDICTION</u>

The District Court had jurisdiction under 28 U.S.C. § 1331.

This Court lacks jurisdiction to hear this interlocutory appeal of a discovery order. As explained below, none of the Appellants have appellate standing. In addition, this case does not fit the narrow exception for appealable collateral orders set forth in *In Re Hubbard*, 803 F.3d 1298 (11th Cir. 2015).

## <u>STATEMENT OF THE ISSUES</u>

**<u>Issue 1</u>**:  Does this Court have jurisdiction to hear an appeal of a discovery order that did not aggrieve the party to the case below and where the other Appellants did not participate in the proceedings below?

**<u>Issue 2</u>**: Did the District Court apply the correct standard of review to the Magistrate Judge's legal findings?

**<u>Issue 3</u>**:  Did the District Court correctly hold that the legislative privilege does not apply to school board members' decisions to remove specific library books from school libraries based on existing school board policy?

## STATEMENT OF THE CASE

## I.    NATURE OF THE CASE

Plaintiffs-Appellees ("Plaintiffs") are parents of students in the Escambia County School District, book authors, a book publisher, and an organization that represents authors, who challenge the decisions of Defendant Escambia County School Board ("Board") to remove nine books and restrict access to over 100 books in school libraries. In its ruling denying the Board's Motion to Dismiss, the District Court held that, to prevail, Plaintiffs must show that the books were removed or restricted "based on ideological objections to the books' content or disagreement with their messages or themes, rather than for pedagogical reasons." D.E. 65 at 7. In other words, as the Eleventh Circuit has explained in another case challenging library book removals, "the Board's motive is the ultimate fact upon which the resolution of the constitutional question depends." *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1204 (11th Cir. 2009).

Notwithstanding the clear law providing that the Board's motives for the book removals and restrictions are the central issue in the case, the Board has sought to bar Plaintiffs from deposing the Board members about their book removal decisions. In particular, the Board contends that the legislative privilege shields Board members from having to testify about the reasons for their book removal decisions. In a thoughtful Order that is the subject of this appeal, the District Court declined

the Board's invitation to overextend the legislative privilege to bar Plaintiffs from deposing the Board members. The District Court correctly held that the Board's decisions to remove specific books from school libraries constituted the application of existing policy to specific facts and thus were administrative acts not covered by the privilege.

As a threshold matter, this Court lacks jurisdiction to hear this interlocutory appeal. The Board is the only party to the proceedings below, but because the privilege belongs to the individual Board members, the Board itself is not an aggrieved party to establish appellate standing. And in any event, the narrow exclusion this Court has recognized for *nonparty* governmental entities or officials to appeal interlocutory discovery orders does not apply to the Board. The Board members themselves are also not proper appellants, as they failed to participate in the proceedings below, a prerequisite for nonparties to have appellate standing.

If the Court determines that it nevertheless has jurisdiction, it should affirm the District Court's decision. The legislative privilege does not bar the Board members' depositions because the actions at issue here—deciding to remove specific books from school libraries based on facts particular to those books in accordance with the school district's policy—were administrative, not legislative, in nature. Accordingly, the legislative privilege does not apply.

The Board's remaining arguments for reversal fare no better. The Board

contends that the District Court failed to apply the correct standard of review to the Magistrate Judge's decision. Not so. The District Court correctly identified the "contrary to law" standard and concluded that the Magistrate Judge erred in applying the doctrine of legislative privilege. Further, the District Court adequately explained its reasoning, citing and discussing Eleventh Circuit case law setting out standards for determining when the legislative privilege applies, and applied the law to the circumstances of this case.

## II.    STATEMENT OF THE FACTS

The underlying lawsuit challenges the decisions of the Board to remove nine books from Escambia County school libraries and restrict access to over 100 additional books while the challenges to those books are considered by the school district. *See* D.E. 27 ¶¶ 88, 98, 105. The process resulting in those book removals and restrictions began in May 2022, when a single Escambia County school teacher, Vicki Baggett, began a campaign to remove books from school libraries based on ideological objections to their contents. *Id.* ¶¶ 42, 46-65, 112-19, 124-26 & Exs. 5-7, 13-14, 18, 19. The books were challenged based on their positive portrayal of LGBTQ characters, references to racism, and other viewpoints that Ms. Baggett and others found objectionable. *See id.* These books include many classics of American literature, which have been on school library shelves for years, if not decades. *Id.* ¶¶ 68, 82.

The school district had a policy—"Policy 4.06"—for handling such book challenges. *See id.* Ex. 1; Def. Br. at 5-6, 40-41 (describing policy). Policy 4.06 provided that a book challenge would be considered by a review committee composed of community members, school administrators, teachers, parents/guardians, and media specialists (i.e., school librarians). D.E. 27 Ex. 1 at 13-14. Absent an appeal to the Board, the review committee's decision was final. *Id.* Ex. 1 at 14. If the complainant disagreed with the review committee's decision regarding a particular book, she could appeal to the Board, which would then review all materials presented to the review committee and make its decision. *Id.* Ex. 1 at 14-15. Among the materials provided to both the review committees and the Board in this process were the book at issue, as well as professional reviews of the book. *Id.* Ex. 1 at 13-14.[1]

Each of the nine removed books was removed by the Board based on a vote of its individual members. *Id.* ¶¶ 100-05, 111-37. In each case, the removal decision was contrary to the recommendation of the review committee, which had determined that each of the books have educational or literary value and are suitable for the relevant grade levels. Am. Compl. ¶¶ 93-98, 100-03, 112-37.[2]

---

[1] *See also* https://tinyurl.com/mpkkwckx (school district website listing challenged books and linking materials provided to review committees and the Board).

[2] Plaintiffs also challenge the Board's practice of restricting student access to over 100 challenged books while the challenges are considered. Many of the books have been restricted for over two years. Those restrictions are not at issue in this appeal.

## III.   COURSE OF PROCEEDINGS

Plaintiffs filed the operative amended complaint in July 2023. D.E. 27. After briefing and argument, the District Court denied the Board's motion to dismiss Plaintiffs' First Amendment claims of viewpoint discrimination and right to receive information, and dismissed Plaintiffs' equal protection claim. D.E. 65 at 6-10.

In its Order on the Board's motion to dismiss, the District Court described the applicable legal standard for Plaintiffs' First Amendment claims as follows:

> The applicable legal standard for evaluating alleged First Amendment violations in the school library context is not entirely clear but the common theme in all of the potentially relevant standards . . . is that school officials cannot remove books solely because they disagree with the views expressed in the books but that they can make content-based removal decisions based on legitimate pedagogical concerns including things like pornographic or sexual content, vulgar or offensive language, gross factual inaccuracies, and educational unsuitability for certain grade levels.

*Id.* at 7. The Court ruled that the amended complaint plausibly alleged that the Board had removed and restricted library books "based on ideological objections to the books' content or disagreement with their messages or themes, rather than for pedagogical reasons," and that Plaintiffs could proceed to discovery. *Id.* at 7-8.

In the course of discovery, Plaintiffs served notices of deposition for each of the Board members on the Board itself, which accepted service. D.E. 82-1. Plaintiffs

---

As set forth in Plaintiffs' Motion to Expedite before this Court, the District Court has stayed the entirety of the case below—including claims as to the restricted books—pending resolution of this appeal. D.E. 170.

sought to depose the Board members regarding their motivations behind their individual decisions to vote to remove certain books against the recommendation of the review committees. The Board moved for a protective order to prevent the depositions on a number of grounds, including legislative privilege. D.E. 82. The Board's motion was denied by the Magistrate Judge without prejudice because "the legislative privilege is personal to the legislator" and the Board's motion failed to include an indication that the individual Board members wished to invoke the privilege. D.E. 98.

The Board filed a renewed motion for protective order, attaching a short declaration from each Board member stating that "to the extent the legislative privilege is applicable to me and may be invoked by me, I confirm my intent to assert the privilege here." D.E. 107–107-5. The Board members did not otherwise appear or participate in the motion. Plaintiffs opposed the renewed motion. D.E. 113.[3]

---

[3] In an abundance of caution, Plaintiffs also served amended notices of depositions and subpoenas for testimony on the Board. Plaintiffs clarified that the subpoenas were protective in nature and that "whatever the court decides on the protective order motion will determine whether we can depose the board members." Email from S. Agarwal to N. Smith, Aug. 28, 2024 (4:18pm). Counsel for the Board responded: "If the court denies the motions [sic], the subpoenas likely will be moot because we'd produce the witnesses; however, in the event the Board decides to appeal the ruling, we'd want the opportunity to preserve the motion to quash issue." Email from N. Smith to S. Agarwal, Aug. 29, 2024 (12:09pm). Neither the Board nor the Board members ever filed a motion to quash the subpoenas. As the Board members are effectively the Board's officers, directors or managing agents, the deposition notices served upon the Board were sufficient and no subpoenas were necessary. *See, e.g.*, *Brunson v. PHH Mortgage Corp.*, 342 F.R.D. 315, 320 (M.D. Fla. 2022) ("[A]

The Magistrate Judge held a hearing on the Board's renewed motion. D.E. 115. The individual Board members did not participate in this hearing. The Magistrate Judge granted the Board's motion. D.E. 138. Plaintiffs filed objections to the Magistrate Judge's order with the District Court pursuant to Fed. R. Civ. P. 72(a), D.E. 143, and the Board responded, D.E. 151.

The District Court held a hearing on Plaintiffs' objections at which the Board members neither appeared nor participated. D.E. 152. At the conclusion of the hearing, the District Court explained its reasoning on the record and stated that it would sustain Plaintiffs' objections and permit the depositions of the Board members to move forward. D.E. 156 at 133-36. In light of the Board's stated intent to appeal, the District Court entered an Order memorializing this ruling, D.E. 153, and two days later, it entered an Amended Order, D.E. 155.

The Amended Order set forth the applicable legal standard from *Crymes v. DeKalb County, Ga.*, 923 F.2d 1482 (11th Cir. 1991), and *Brown v. Crawford County*, 960 F.2d 1002 (11th Cir. 1992), and explained that under that standard the decisions to remove the books were administrative: "The removal/restriction

---

corporation is responsible for producing its officers, managing agents, and directors if notice is given; a subpoena for their attendance is unnecessary, and sanctions may be imposed against the corporation if they fail to appear."); Wright & Miller, *Federal Practice and Procedure* § 2103 (same); Fed. R. Civ. P. 37(b)(2)(A). The emails discussed above are not included in a Supplemental Appendix because they were not submitted to the District Court, but they are available if the Court requests them.

decision is based on specific facts (the content of the book), and . . . involves the case-by-case application of the standards in state law and school board policy to a specific book, not the formulation of general standards that apply to all books." D.E. 155 at 5-6. The District Court also noted that it applied plenary review to the Magistrate Judge's legal conclusions under Fed. R. Civ. P. 72(a). *Id.* at 4 n.1.

The Board and the individual Board members then appealed the Amended Order to this Court, D.E. 157, and the District Court stayed all proceedings pending resolution of this appeal. D.E. 170.

## IV. STANDARD OF REVIEW

This Court reviews a "District Court's ruling on discovery matters only for abuse of discretion." *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1125 (11th Cir. 2021). Under that standard, the Court "will leave the district court's ruling on the motion undisturbed unless the district court has made a clear error of judgment, or has applied the wrong legal standard." *Id.*

## SUMMARY OF THE ARGUMENT

This appeal should be dismissed for lack of jurisdiction. Alternatively, this Court should affirm the District Court's Amended Order applying *de novo* review to the Magistrate Judge's decision and holding that the Board's decisions to remove particular books from school libraries are administrative and thus not protected by legislative privilege.

First, the Court lacks jurisdiction to hear this appeal because (1) the legislative privilege belongs to individual Board members, not the Board, so the Board has not been aggrieved by the District Court's Amended Order; and (2) the Board members failed to intervene or otherwise meaningfully participate in the District Court proceedings, a necessary requirement for nonparty appellate standing.

Second, the District Court applied the proper standard of review. A district court may modify or set aside any part of a magistrate judge's order when it is "clearly erroneous or . . . contrary to law." Fed. R. Civ. P. 72(a). While the "clearly erroneous" standard applies to questions of fact, and is deferential to a magistrate judge's decision, the "contrary to law" standard applies to the questions of law (and law as applied to facts). As multiple other Circuits have held, the "contrary to law" standard is the equivalent of *de novo* review of questions of law. As the question of whether the legislative privilege protects Board members' decisions to remove individual books from school libraries is a question of law, the District Court properly reviewed the Magistrate's order *de novo.*

Finally, the District Court correctly held that the decisions to remove particular books from school libraries are administrative and thus not protected by legislative privilege. Only legislative acts are protected by legislative privilege. Legislative acts are those that involve the making of policy of general application; administrative acts, meanwhile, are those that apply existing policies to a specific

10

set of facts. In deciding to remove specific books from school libraries, the Board members applied the Board's existing policy to a specific set of facts—the content of each challenged book—which is quintessentially an administrative act. Those decisions created no policy of general application that could be applied to future book removals.

For these reasons and the reasons set forth below, the Court should dismiss this appeal for lack of jurisdiction, or in the alternative, affirm the District Court's Amended Order denying the Board's motion for a protective order.

## ARGUMENT

I. **THE COURT DOES NOT HAVE JURISDICTION OVER THIS INTERLOCUTORY APPEAL BECAUSE APPELLANTS DO NOT HAVE APPELLATE STANDING AND THE NARROW EXCEPTION FOR COLLATERAL ORDERS DOES NOT APPLY.**

Neither the Board nor the individual Board members have standing to appeal the District Court's Amended Order, so this appeal must be dismissed for lack of jurisdiction. The Court has "a special obligation to satisfy [itself] of [its] own jurisdiction before proceeding to the merits of an appeal." *Finn v. Cobb Cnty. Bd. of Elections & Registration*, 111 F.4th 1312, 1316 (11th Cir. 2024) (cleaned up). Thus, this Court must first determine whether Appellants have standing to appeal the District Court's order. *Id.*

### A. Appellate Standing Standards

"Litigants must establish their standing not only to bring claims, but also to appeal judgments." *Kimberly Regenesis, LLC v. Lee Cnty.*, 64 F.4th 1253, 1259 (11th Cir. 2023) (citation omitted). "To establish appellate standing, a litigant must prove that he has suffered a concrete and particularized injury" that was caused by the district court's order. *Id.* (cleaned up). In other words, "only a litigant who is *aggrieved by the judgment or order* may appeal." *Id.* (cleaned up).

Generally, "only parties to a lawsuit, or those that properly may become parties, may appeal an adverse judgment." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988). The Supreme Court has recognized that exceptions to the "only parties may

12

appeal" rule exist, but it has encouraged circuit courts to exercise caution because "the better practice is for such a nonparty to seek intervention for purposes of appeal." *Id.* While the Eleventh Circuit has not defined "the precise contours" of whether or when a nonparty who has not intervened may still appeal, *Finn*, 111 F.4th at 1317, it has determined that a nonparty must have "at least participated in the district court" to establish appellate standing. *Kimberly Regenesis*, 64 F.4th at 1262.

### B.    The Board Lacks Standing To Bring This Interlocutory Appeal.

The Board has not been aggrieved by the District Court's Amended Order because the legislative privilege belongs to individual Board members, not the Board. In *Kimberly Regenesis*, this Court dismissed the county's appeal of a district court order that found the commissioners were not protected from discovery by quasi-judicial immunity because "official immunities . . . belong to the official, not the county." *Id.* at 1259. The Court explained that "the county [was] not aggrieved by the district court denying the immunity"—only the nonparty commissioners were. *Id.* at 1260.

Here, "[t]he legislative privilege belongs to the individual legislator." D.E. 138 at 12 (citing *In Re Hubbard*, 803 F.3d 1298, 1309 (11th Cir. 2015) ("[Legislators] each unquestionably hold their own privilege."); *In re Grand Jury Procs.*, 563 F.2d 577, 585 (3d Cir. 1977) (Legislative privilege is "a personal privilege which may be asserted by a legislator.")). As the legislative privilege

13

here—if it applies at all—belongs to the individual Board members and not the Board, the Board has not been aggrieved by the District Court's order. Thus, the Board does not have standing to appeal.

### C.    *Hubbard* Does Not Support Jurisdiction in this Case.

Appellants contend this Court has jurisdiction under 28 U.S.C. §1291 and the collateral order doctrine. Def. Br. at xi; *see Hubbard*, 803 F.3d at 1305-07. As a general rule, only final decisions are appealable. 28 U.S.C. § 1291. Final decisions include a "small class of collateral rulings that, although they do not end the litigation, are appropriately deemed final." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (cleaned up). "That small category includes only decisions that are conclusive, that resolve important questions from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Id.* (citation omitted). Discovery orders are not generally collateral orders subject to appeal because such orders are not "effectively unreviewable." *Id.* at 103, 106-08.

However, this Circuit has created a narrow exception to that general rule of non-appealability: a governmental party has a right to "immediately appeal a discovery order *where he is not a party* to the lawsuit" and where the governmental nonparty participated in the action below. *Hubbard*, 803 F.3d at 1305 (emphasis added). *Hubbard* involved an appeal by nonparty government officials who had

14

unsuccessfully moved to quash a subpoena, asserting legislative privilege. *Id.* The Court noted that "[n]one of the four [lawmaker appellants] is a party to the lawsuit and *neither are their agencies.*" *Id.* (emphasis added). Thus, the nonparty legislators were proper appellants because otherwise the order seeking discovery from them would have been unreviewable. *Id.*

It follows that only nonparties are entitled to interlocutory review of discovery orders under *Hubbard*; parties are not. *See id.*; *see also Mohawk Indus.*, 558 U.S. at 110-11. Here, the Board is a party to the lawsuit, so *Hubbard* does not establish a right of appeal for the Board, and, as explained below, the individual Board members did not participate in the underlying proceedings, so they cannot appeal under *Hubbard*'s exception either. *Hubbard*, 803 F.3d at 1303-04 ("The three [government officials] . . . promptly filed motions to quash the subpoenas. . . .").

### D. The Individual Board Members Lack Standing to Appeal.

The individual Board members likewise do not have standing to bring this appeal because they are not parties to this case, and they did not participate in the proceedings in the District Court. For a nonparty to have appellate standing, they must have at least participated in the proceedings in the district court. *Kimberly Regenesis*, 64 F.4th at 1262.

### 1. The Board Members Did Not Participate in the District Court Proceedings.

In *Kimberly Regenesis*, this Court was faced with almost identical facts and

an almost identical procedural history to this appeal. Plaintiffs sued a county over the denial of a rezoning request. *Id.* at 1255. The plaintiffs sought to depose the county commissioners, who were not parties to the action. *Id.* at 1257. The county moved for a protective order based on quasi-judicial immunity; the nonparty commissioners filed no motion. *Id.* The county appeared at a hearing; the nonparty commissioners did not appear. *Id.* The county and plaintiffs filed notices of supplemental authority, and the court held a second hearing at which, again, only the plaintiffs and the county appeared. *Id.* The magistrate judge found that quasi-judicial immunity did not apply and ordered the commissioners' depositions to proceed. *Id.* at 1258. The county objected to the magistrate judge's order; none of the commissioners objected. *Id.* The nonparty commissioners' first appearance in the case was to appeal the district court's adoption of the magistrate's order. *Id.*

*Kimberly Regenesis* dismissed the commissioners' appeal for lack of appellate standing because the commissioners did not participate in the proceedings before the district court. *Id.* at 1259, 1262. Crucially, the court held that "the county's assertion of the immunity [did not] equate to the commissioner's participation in the case." *Id.* at 1264.

Here too, the Board members have not sufficiently participated in the District Court proceedings to have standing to appeal. Like the county in *Kimberly Regenesis*, it was the Board that moved for a protective order, D.E. 82, the Board

16

that moved for a renewed protective order after its first motion was denied, D.E. 98, the Board that appeared before the Magistrate Judge, D.E. 124, 133, and the Board that responded to Plaintiffs' objections to the Magistrate Judge's order, both in briefs and at the hearing before the District Court. D.E. 151, 152. The Board members' first appearance in this case was in the notice of appeal. "That was too late in [*Kimberly Regenesis*] and it's too late here." *Kimberly Regenesis*, 64 F.4th at 1263.

Nor do the Board's assertion of privilege on the Board members' behalf or the members' boilerplate affidavits equate to participation in the underlying proceeding. *See id.* at 1264 ("[T]he county's assertion of the immunity doesn't equate to the commissioner's participation in the case."); *id.* at 1262-63 (discussing *Texas Brine Co., LLC v. Occidental Chem. Corp.*, 879 F.3d 1224, 1228 n.4 (10th Cir. 2018) (affidavit filed by nonparty attached to party's motion to quash subpoena fell short of participation in the district court)); ECF 107-1–107-5.

### 2. Participation in the District Court Must Be Active and Substantial.

This Court's sister circuits provide examples of what conduct satisfies the participation test. This Court has favorably cited the Fourth Circuit's requirement that the nonparty have "actively participated in the particular stage of the district court proceedings that is challenged on appeal." *Finn*, 111 F.4th at 1318–19 (quoting *Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 275, 284 (4th Cir. 2018) (participation in the proceeding as amicus is not active participation)). Likewise, the Ninth Circuit

applies a "high bar," requiring a nonparty to have been "significantly involved in the district court proceedings" to establish appellate standing. *Habelt v. iRhythm Techs., Inc.*, 83 F.4th 1162, 1167 (9th Cir. 2023); *see also Citibank Int'l v. Collier-Traino, Inc.*, 809 F.2d 1438, 1441 (9th Cir. 1987) (nonparty who chooses not to intervene, join, or make an appearance, even though it had "actual knowledge of the proceedings and their substance" does not have appellate standing). Where courts have found sufficient participation below, that participation was substantial. *United States v. Fluitt*, 99 F.4th 753, 761 (5th Cir. 2024) (nonparty asserted privilege and opposed a motion to compel with briefing and oral argument); *Curtis v. Des Moines*, 995 F.2d 125, 128 (8th Cir. 1993) (nonparty actively participated in post-trial executions on a judgment by appearing in court and submitting briefs); *SEC v. Wencke*, 783 F.2d 829, 834–35 (9th Cir. 1986).

These cases demonstrate that participation in the district court proceedings must be active and substantial—a nonparty must do more than sign a declaration attached to the party's motion. It must at the very least file its own motion, submit briefing, or make an appearance at a hearing. The Board members had ample opportunity to do so here. They could have filed their own motions for protective orders. Fed. R. Civ. P. 26(c)(1) ("*[A]ny person* from whom discovery is sought may move for a protective order." (emphasis added)). They "could have participated— and objected to the discovery—by sitting for the deposition and asserting a privilege

18

in response to concrete questions," which would have allowed Plaintiffs to move for an order compelling the discovery. *Kimberly Regenesis*, 64 F.4th at 1263.

Most importantly, they could have intervened for purposes of this appeal. *See Marino*, 484 U.S. at 304 ("[T]he better practice is for such a nonparty to seek intervention for purposes of appeal."). "[W]hen intervention is readily available[,] . . . courts are powerless to extend a right of appeal to a nonparty who abjures intervention." *Finn*, 111 F.4th at 1319 (cleaned up); *see also Felzen v. Andreas*, 134 F.3d 873, 874 (7th Cir. 1998), *aff'd sub nom. by an equally divided Court, Calif. Pub. Employees' Retirement Sys. v. Felzen*, 525 U.S. 315 (1999).

Here, the Board members chose not to participate or intervene in the district court proceedings, and they cannot appear for the first time now. The equities do not favor allowing them "to ignore the 'better practice' here." *Finn*, 111 F.4th at 1319 (quoting *Marino*, 484 U.S. at 304).

## II. THE DISTRICT COURT APPLIED THE PROPER STANDARD OF REVIEW.

The District Court correctly determined that the "contrary to law" standard under Rule 72(a) incorporates a *de novo* review of the legal aspects of the Magistrate Judge's non-dispositive order. The Board's interpretation of the appropriate standard of review is flawed for several reasons.

First, an unpublished Eleventh Circuit case, along with every other circuit that has addressed the issue, interprets the "contrary to law" standard as equivalent to *de*

*novo* review. Second, even under the more deferential abuse of discretion standard, the District Court would have conducted a *de novo* review of legal questions, making any error in not applying the abuse of discretion standard harmless. Third, statutory interpretation canons confirm that Congress intended "clearly erroneous" and "contrary to law" to represent distinct standards, undermining the Board's interpretation. Finally, the Board's interpretation of case law does not warrant overturning the District Court's legal findings, particularly given its misinterpretation of *Merritt* and the district court decisions that rely upon it.

### A.     The "Contrary to Law" Standard Means *De Novo* Review of Legal Conclusions.

Federal Rule of Civil Procedure 72(a) requires a district court to modify or set aside any part of a magistrate judge's order on non-dispositive pre-trial matters that the district court finds to be "clearly erroneous or . . . contrary to law."  Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). The question of whether legislative privilege applies is a legal one. *Ellis v. Coffee Cnty. Bd. of Registrars*, 981 F.2d 1185, 1190 (11th Cir. 1993) (holding claims of legislative immunity turn on questions of law).

A finding is clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Illoominate Media, Inc. v. CAIR Fla., Inc.*, No.

22-10718, 2022 WL 4589357, at *2 (11th Cir. Sept. 30, 2022). In contrast, the "contrary to law" standard examines "whether the magistrate judge's order fails to apply or misapplies relevant statutes, case law, or rules of procedure." *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19md2885, 2022 WL 2436843, at *1 (N.D. Fla. Mar. 11, 2022).

This Court has recognized that the Rule 72(a) standard requires the district judge to act essentially as an appellate court, reviewing factual determinations for clear error and legal issues *de novo. Illoominate Media*, 2022 WL 4589357, at *2 ("A district judge reviewing a magistrate judge's nondispositive order 'must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.' Fed. R. Civ. P. 72(a). On appeal, *we are bound by the same standard*: we review the district court's application of law *de novo*, but its findings of fact for clear error." (emphasis added)).[4]

Similarly, every other circuit to address the issue interprets the "contrary to law" standard to mean *de novo* review. *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14-15 (1st Cir. 2010) ("[F]or questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and review under Rule 72(b)'s *de novo* standard."); *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 91 (3d Cir.

---

[4] "Although an unpublished opinion is not binding . . . , it is persuasive authority." *United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000); *see generally* Fed. R. App. P. 32.1; 11th Cir. R. 36-2.

1992) ("Under [Rule 72](b)(1)(A), . . . 'contrary to law' indicates plenary review as to matters of law."); *Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014) ("[L]egal conclusions [in a magistrate judge's non-dispositive order] are reviewed *de novo*."); *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) ("[W]hether the magistrate judge failed to apply *Howe* is a legal question that the district court was required to review *de novo*."); *Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002) ("We review a district court's denial of a motion to reconsider a magistrate's pretrial order under that same standard" and "questions of law are reviewed *de novo*." (cleaned up)); *Quint v. Vail Resorts, Inc.*, 89 F.4th 803, 809 (10th Cir. 2023) ("[T]he phrase contrary to law indicates plenary review as to matters of law." (cleaned up)).

The District Court correctly recognized that the "contrary to law" standard authorizes *de novo* review, noting that "[t]his interpretation is consistent with the well-established principle that if the [lower] court misapplies the law [the reviewing court] will review and correct the error without deference to that court's determination." D.E. 155 at 4 n.1 (quoting *Haitian Refugee Ctr. v. Baker*, 953 F.2d 1498, 1505 (11th Cir. 1992)); *see also United States v. Shamsid-Deen*, 61 F.4th 935, 944 (11th Cir. 2023)).[5]

---

[5] The District Court stated that "Rule 72(a) does not *require* the district court to conduct a de novo review of a magistrate judge's order on a nondispositive matter." D.E. 155 at 4 n.1 (citing cases). That is correct as a general statement (which is what

Accordingly, the District Court correctly held that the "contrary to law" standard authorizes *de novo* review of the Magistrate Judge's legal conclusions.

**B.    Even the Deferential Abuse of Discretion Standard Contemplates *De Novo* Review for Questions of Law.**

The Board argues that the District Court should have applied an abuse of discretion standard and erred in holding that the Magistrate Judge's order was contrary to law because it "found no abuse of discretion by the magistrate judge." Def. Br. at 31-32. But in arguing that the District Court abused its discretion in finding that the book removal decisions were administrative in nature, the Board itself acknowledges that the abuse of discretion standard is met when *the reviewed court* applies an "incorrect legal standard" or applies the law in "an unreasonable or incorrect manner." *Id.*; *see also id.* at 14 ("A ruling based on an error of law . . . is an abuse of discretion."); *id.* at 16 ("[T]he district court committed an error of law— and therefore abused its discretion."). So, even under the Board's own reasoning, if the Magistrate Judge committed an error of law, that would qualify as an abuse of discretion warranting reversal, with no deference owed to the reviewed court. *See also Koon v. United States*, 518 U.S. 81, 100 (1996) ("Little turns, however, on whether we label review of this particular question abuse of discretion or *de novo*. . . . The abuse-of-discretion standard includes review to determine that the discretion

---

the cases cited by the District Court stand for), but is not correct when it comes to questions of law, which are to be reviewed *de novo.*

23

was not guided by erroneous legal conclusions."); *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1311 (11th Cir. 2023) ("As is typical for this Court's abuse of discretion review, we review the district court's legal conclusions *de novo* and its subsidiary factual findings for clear error."); *WasteCare Corp. v. Harmony Enters.*, 822 F. App'x 892, 895 n.2 (11th Cir. 2020) ("Because we hold that the district court erred by making an error of law, whether we review this decision *de novo* or under an abuse of discretion standard does not, at bottom, affect the outcome."). Other circuit courts agree. *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 380 (2nd Cir. 2021) ("[A] decision premised on a legal error is necessarily an abuse of discretion."); *Fernandez v. RentGrow, Inc.*, 116 F.4th 288, 294 (4th Cir. 2024) (similar); *United States v. Delgado-Nunez*, 295 F.3d 494, 496 (5th Cir. 2002) (similar); *United States v. Ballard*, 885 F.3d 500, 504 (7th Cir. 2018) (similar); *Captiva Lake Invs., LLC v. Fid. Nat'l Title Ins. Co.*, 883 F.3d 1038, 1046 (8th Cir. 2018) (similar); *United States v. DAS Corp.*, 18 F.4th 1032, 1040 (9th Cir. 2021) (similar); *United States v. Kpodi*, 888 F.3d 486, 491 (D.C. Cir. 2018) (similar).

Accordingly, if the Court finds that the District Court erred by not explicitly equating the "contrary to law" standard with the abuse of discretion standard, such an error would be harmless. The District Court would have still reviewed the Magistrate Judge's legal findings *de novo.*

24

**C.** **Canons of Statutory Interpretation Support Distinct Standards for "Clearly Erroneous" and "Contrary to Law" in Rule 72(a) and § 636(b)(1)(A).**

Canons of statutory construction also favor the Plaintiffs' interpretation of Rule 72(a) and 28 U.S.C. § 636(b)(1)(A), emphasizing the distinct meanings of "clearly erroneous" and "contrary to law" in judicial review. It is well-established that "[w]hen Congress uses different language in similar sections, we should give those words different meanings." *McCarthan v. Dir. of Goodwill Indus. Suncoast, Inc.*, 851 F.3d 1076, 1089 (11th Cir. 2017) (cleaned up). Moreover, the Supreme Court and this Court have held that the "ordinary use of 'or' is almost always disjunctive, and the words it connects are to be given separate meanings." *Santos v. Healthcare Revenue Recovery Grp., LLC*, 90 F.4th 1144, 1153 (11th Cir. 2024) (quoting *United States v. Woods*, 571 U.S. 31, 45 (2013)).

Both Rule 72(a) and 28 U.S.C. § 636(b)(1)(A) use "clearly erroneous" and "contrary to law" in close proximity, separated only by "or," suggesting that Congress intended them to have distinct meanings. *See* Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). The Board's position, conflating these phrases rather than distinguishing them meaningfully, ignores these bedrock principles.

The Board suggests that interpreting "contrary to law" as authorizing *de novo* or plenary review would erase the distinction between the standards of review for dispositive and non-dispositive orders of magistrate judges. Def. Br. at 31. Not so.

25

As to questions of fact, the "clearly erroneous" standard of Rule 72(a) is more deferential than *de novo* review under Rule 72(b). Only as to questions of law is the reviewing standard the same. *PowerShare*, 597 F.3d at 14-15 ("[F]or questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and review under Rule 72(b)'s de novo standard."); *Patton v. Johnson*, 915 F.3d 827, 833 (1st Cir. 2019) ("[A] magistrate judge's answers to questions of law, whether rendered in connection with a dispositive motion or a non-dispositive motion, engender de novo review.").

### D. The Board's Interpretation of Case Law Does Not Warrant Overturning the District Court's Legal Findings.

#### 1. The Board Incorrectly Interprets *Merritt*.

The Board relies heavily on a single sentence from the Fifth Circuit in *Merritt v. International Brotherhood of Boilermakers*, 649 F.2d 1013, 1016-17 (5th Cir. 1981), to support the notion that legal determinations are not subject to *de novo* review under Rule 72(a). Def. Br. at 19-21, 27-28, 31 (citing *Merritt*, 649 F.2d at 1016-17 ("Pretrial orders of a magistrate under § 636(b)(1)(A) are reviewable under the 'clearly erroneous and [sic] contrary to law' standard; they are not subject to a de novo determination as are a magistrate's proposed findings and recommendations under [28 U.S.C.] § 636(b)(1)(B).")). But that sentence was a dictum that neither addressed the meaning of "contrary to law" nor its distinction from "clearly erroneous."

*Merritt* held that a magistrate judge's decision to award attorney's fees was within his authority and was not "clearly erroneous or contrary to law." *Merritt*, 649 F.2d at 1018, 1019. The statement relied on by the Board was not, as the Board asserts repeatedly, a "holding." Def. Br. at 20, 26. Rather, it is dicta that "does not bind" the court. *See United States v. Caraballo-Martinez*, 866 F.3d 1233, 1244-45 (11th Cir. 2017).

Nor is *Merritt* inconsistent with the District Court's decision. *Merritt* simply states that non-dispositive motions, unlike dispositive ones, are not entirely subject to *de novo* review. But Merritt does not address the meaning of "contrary to law," how it is different from "clearly erroneous," or whether the "contrary to law" standard is the equivalent of *de novo* review. It is silent on that question.

The Board's misunderstanding of *Merritt* is highlighted by the Fifth Circuit's failure to cite *Merritt* for the proposition on which the Board relies. In fact, the Fifth Circuit has since clarified that "contrary to law" means *de novo* review. *Moore*, 755 F.3d at 806. Recognizing this, the Board strains to distinguish *Moore*, a published Fifth Circuit case directly addressing this issue, on the grounds that *Moore* relied on cases outside the context of Rule 72(a) motions. Def. Br. at 25-26. But the Board's disagreement with *Moore's* reasoning does not make it bad law—in the Fifth Circuit, the "contrary to law" standard of Rule 72(a) is equivalent to *de novo* review, a rule

27

wholly inconsistent with the Board's reading of *Merritt*.[6]

## 2. The Board's Reliance on District Court Decisions Is Misplaced.

The Board provides a lengthy string cite of district court cases that supposedly support its position. Def. Br. at 22-24 & n.8. But those decisions do not warrant overturning the District Court's legal conclusions for several reasons.

First, district court decisions are not binding on this Court. Indeed, neither the District Court nor the Eleventh Circuit is "bound by another district court's decision, or even an opinion by another judge of the same district." *Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991). Moreover, sister circuit decisions, while not binding, are considered persuasive, especially where—as here—they uniformly reach the same conclusion. *Moore v. Cecil*, 109 F.4th 1352, 1363 (11th Cir. 2024). These sister circuit precedents are consistent with the principle that Rule 72(a)'s "contrary to law" standard includes *de novo* review of legal conclusions.

---

[6] For similar reasons, the Board's reading of *Grimes v. City and County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991), Def. Br. at 20, does not justify reversing the District Court's decision. First, the Ninth Circuit has established that "contrary to law" entails *de novo* review. *Osband*, 290 F.3d at 1041. Second, *Grimes* appears to implicate an abuse of discretion standard when assessing whether a non-dispositive order was "contrary to law." *Grimes*, 951 F.2d at 241 ("This ruling has no basis in law. As such, it is an abuse of discretion."). As noted *supra* at Section II.B, even under an abuse of discretion standard, the Ninth Circuit, along with every other circuit, including this Circuit, has made it clear that legal questions are subject to *de novo* review. *DAS Corp.*, 18 F.4th at 1040.

Second, most of the cases cited by the Board make general statements about the Rule 72(a) and section 636(b)(1)(A) standards as a whole, or simply highlight the difference between sections 636(b)(1)(A) and (b)(1)(B); they do not discuss the meaning of "contrary to law."[7] *See Graham v. Mukasey*, 247 F.R.D. 205, 207 (D.D.C. 2008); *Hasbrouck v. BankAmerica Hous. Servs., Inc.*, 190 F.R.D. 42, 44 (N.D.N.Y. 1999); *Fisher v. Ciba Specialty Chems. Corp.*, No. 03-0566-WS-B, 2007 WL 987457, at *1 (S.D. Ala. Mar. 30, 2007); *Vill. Spires Condo. Ass'n v. QBE Ins. Corp.*, No. 06-14191, 2008 WL 11408524, at *2 (S.D. Fla. Jan. 15, 2008); *Boldstar Tech., LLC v. Home Depot, Inc.*, No. 07–80435–CIV, 2008 WL 9907300, at *1 (S.D. Fla. Apr. 14, 2008); *Factory Direct Tires Inc. v. Cooper Tire & Rubber Co.*, No. 3:11-cv-255-RV/EMT, 2012 WL 12873552, at *1 (N.D. Fla. July 27, 2012); *Leo v. Alfa Mut. Ins. Co.*, No. 1:13-CV-1826-VEH, 2014 WL 12919434, at *1 (N.D. Ala. June 6, 2014); *Gupta v. U.S. Att'y Gen.*, No. 6:13-cv-1027-Orl-40KRS, 2015 WL 5687829, at *3 (M.D. Fla. Sept. 25, 2015); *Barron v. EverBank*, No. 1:16-CV-4595-AT, 2019 WL 1996697, at *2 (N.D. Ga. Mar. 15, 2019); *SEC v. Charnas*, 717 F. Supp. 3d 1233, 1238 (S.D. Fla. 2024); *Santiago v. Lizenbee*, No. 3:23-cv-211-MMHLLL, 2024 WL 3161836, at *1 (M.D. Fla. June 25, 2024).

---

[7] Other district court judges addressing the "contrary to law" standard reached their conclusions on whether a legal finding was contrary to law by conducting their own review of the case law, providing no deference to the magistrate judge. *Featherston v. Metro. Life Ins. Co.*, 223 F.R.D. 647, 650-51 (N.D. Fla. 2004); *United States v. Walden*, No. 03-20566-CR, 2003 WL 27385605, at *5 (S.D. Fla. Dec. 10, 2003).

Third, many district court cases erroneously rely on *Merritt* for the notion that *de novo* review is <u>never</u> permitted in review of a non-dispositive order. Those cases are wrong for the reasons discussed *supra* in Section II.D.1. *Walden*, 2003 WL 27385605, at *4; *Tracy P. v. Sarasota Cnty.*, No. 8:05CV927T27EAJ, 2007 WL 1364381, at *2 (M.D. Fla. May 9, 2007); *Malibu Media, LLC v. Doe*, 923 F. Supp. 2d 1339, 1347 n.9 (M.D. Fla. 2013); *Fox Haven of Foxfire Condo. IV Ass'n v. Nationwide Mut. Fire Ins. Co.*, No. 2:13-cv 399-FtM-29CM, 2014 WL 7405758, at *1 (M.D. Fla. Dec. 30, 2014); *Bales v. Bright Solar Mktg. LLC*, No. 5:21-cv-00496-MMH-PRL, 2023 WL 2553953, at *1 n.4 (M.D. Fla. Mar. 17, 2023); *Rzepokoski v. Nova Se. Univ., Inc.*, No. 22-cv-61147-WPD, 2024 WL 4003687, at *2 (S.D. Fla. Apr. 14, 2024); *Featherston*, 223 F.R.D. at 651; *Vill. Spires Condo. Ass'n*, 2008 WL 11408524, at *2; *Boldstar Tech.* 2008 WL 9907300, at *1; *Factory Direct Tires Inc.*, 2012 WL 12873552, at *1; *Leo*, 2014 WL 12919434, at *1; *El-Saba v. Univ. of S. Ala.*, No. 15-00087-KD-N, 2016 WL 11700794, *1 (S.D. Ala. Aug. 15, 2016); *Barron*, 2019 WL 1996697, at *2; *Santiago*, 2024 WL 3161836, at *1 n.4).

Finally, several of the district court cases suggest an abuse of discretion standard applies without expressly stating that this more deferential standard includes *de novo* review of legal questions. *Tracy P.*, 2007 WL 1364381, at *2; *Malibu Media*, 923 F. Supp. 2d at 1347 n.9; *Bales*, 2023 WL 2553953, at *1 n.4; *Hasbrouck*, 190 F.R.D. at 44; *Fisher*, 2007 WL 987457, at *1; *El-Saba*, 2016 WL

30

11700794, at *1; *Santiago*, 2024 WL 3161836, at *1 n.4. *See supra* Section II.B.

For these reasons, the Court should affirm the District Court's plenary review of the legal conclusions in the Magistrate Judge's order.

### E.   The District Court Sufficiently Explained Why the Magistrate Judge's Conclusion Was Contrary to Law.

The Board complains that the District Court did not adequately explain why the Magistrate Judge's order was contrary to law. Def. Br. at 33-37. The Board cites no authority for this alleged requirement. But in any event, the District Court plainly explained why Board members' decisions to remove specific books were administrative and not legislative acts, based on legal precedent, and thus why the Magistrate Judge had misapplied the law.[8]

---

[8] The Board mistakenly suggests that the District Court's decision reflects mere "disagree[ment]" with the Magistrate Judge rather than a determination that the Magistrate Judge's order was "contrary to law." Def. Br. at 33. But the cases it cites in support do not involve a magistrate judge's misapplication of law to particular facts, as in this case. *See, e.g.*, *Grimes*, 951 F.2d at 241 (magistrate judge's exercise of discretion not contrary to law where grounds for district court's reversal were not based in law); *Shabazz v. Schofield*, No. 3:13-CV-00091, 2014 WL 6605504, at *1, *7 (M.D. Tenn. Nov. 19, 2014) (applying *de novo* review to legal conclusions, holding that magistrate's denial of motion for sanctions was not contrary to law); *Merck Sharp & Dohme Corp. v. Actavis Labs. FL, Inc.*, No. 15-6541 (WHW)(CLW), 2017 WL 2959241, at *3 (D.N.J. July 10, 2017) (decision not contrary to law where, although magistrate did not articulate the legal standard, there was no indication she failed to apply it). By contrast, as reflected in a case cited by the Board, when the district court reviews a legal conclusion, a determination that the law dictates a different conclusion is faithful application of the "contrary to law" standard. *In re Pons*, 614 F. Supp. 3d 1134, 1143, 1149 (S.D. Fla. 2020) (finding an order contrary to law because it misapplied the correct legal standard).

31

First, the District Court noted the legal standard governing the determination—policy-making versus application of existing policies, general facts versus specific facts—citing to two Eleventh Circuit decisions. D.E. 155 at 5-6. The Court then highlighted that the case-by-case determination of a book's removal based on its specific facts "is functionally an administrative act," *id.* at 6, analogizing book removals and restrictions to two acts held to be administrative: employment termination and permitting. As the District Court explained, "the removal/restriction decision involves the case-by-case *application* of the standards in state law and school board policy to a specific book, not the *formulation* of general standards that apply to all books." *Id.*

Second, the District Court rebutted the Magistrate Judge's reasoning that the decision to remove or restrict a book is legislative because of the general applicability of the decision across the school district. *Id.* at 10. Specifically, the District Court noted that while Board members may exercise some discretion when deciding the suitability of a specific book, "they are applying policy, not formulating it, when doing so," *id.* at 6, and the "district-wide impact does not change the fact-specific nature of the decision," *id.* at 7. Finally, the District Court explained that the decision to remove a specific book is no more a policy decision than a decision to fire a specific teacher or grant a specific permit application. *Id.* Contrary to the Board's characterization, the District Court provided reasoned legal analysis and

32

made clear how the Magistrate Judge misapplied the law. *See also* D.E. 156 at 133-36 (District Court explaining reasoning on the record).

Finally, there is no requirement to identify a case directly on point to render a decision "contrary to law." Def. Br. at 34. Courts routinely apply existing law to new factual circumstances; failure to do so properly is contrary to law. *See In re 3M* 2022 WL 2436843, at *1 ("[An order is contrary to law w]hen it fails to apply or *misapplies* relevant statutes, case law, or rules of procedure.") (emphasis added) (quoting *Malibu Media*, 923 F. Supp. 2d at 1347). Accordingly, the District Court correctly determined that the Magistrate Judge misapplied relevant Eleventh Circuit precedent to the factual circumstances of the Board's decisions. D.E. 155 at 5-6. That there was no prior case with identical facts does not allow the Magistrate Judge to misapply binding precedent.[9]

---

[9] The Board tries to suggest otherwise by citing a handful of distinguishable and non-controlling cases in which the courts declined to find an order contrary to law because the underlying legal issue was unsettled, lacking circuit-level guidance, or discretionary. Def. Br. at 34-35 (citing cases). Those considerations do not apply here, as the Eleventh Circuit has ruled repeatedly on whether various acts are administrative or legislative, establishing binding precedents that the Magistrate Judge misapplied.

### III. THE DISTRICT COURT CORRECTLY HELD THAT THE DECISION TO REMOVE A PARTICULAR BOOK FROM SCHOOL LIBRARIES IS ADMINISTRATIVE.

#### A. The Applicable Legal Standard Focuses on Whether an Act Is Policymaking (Legislative) or Applying an Existing Policy (Administrative).

The district court correctly concluded the Board's decisions to remove specific books from school libraries pursuant to the Board's policy were administrative—not legislative—acts. It is undisputed that "it is the nature of the act"—and not the title of a particular individual—"which determines whether legislative immunity shields the individual from suit." *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1062 (11th Cir. 1992).[10] That is, although school board members may be entitled to legislative immunity and privilege when acting in a legislative capacity, their status as local government officials does not cloak all their actions with such protections. Instead, the court must consider "the nature of the act" at issue—in this case, a decision to apply the Board's existing policy to specific challenged books.

This Court has long held that "[a] legislative act involves *policy-making* rather than mere administrative application of existing policies." *Crymes*, 923 F.2d at 1485

---

[10] "Legislative immunity and privilege are parallel concepts, and the privilege exists to safeguard the immunity." *Common Cause Fla. v. Byrd*, 674 F. Supp. 3d 1097, 1103 n.2 (N.D. Fla. 2023) (cleaned up) (citing cases). Accordingly, like the Board, Plaintiffs cite to cases discussing both legislative privilege and legislative immunity.

(11th Cir. 1991) (emphasis added); *Smith v. Lomax*, 45 F.3d 402, 405 (11th Cir. 1995) (same); *Fuller v. Carollo*, No. 21-11746, 2022 WL 333234, at *3 (11th Cir. Feb. 4, 2022) (same). As the court explained in *Crymes,* in identifying factors that might point to whether a decision is "policymaking," "[i]f the facts utilized in making a decision are specific, rather than general, in nature," or "the decision impacts specific individuals, rather than the general population," the decision is more likely to be administrative. *Crymes*, 923 F.2d at 1485; *Smith*, 45 F.3d at 406. *See also Hughes v. Tarrant Cnty. Texas*, 948 F.2d 918, 921 (5th Cir. 1991) ("If the underlying facts on which the decision is based are 'legislative facts,' such as 'generalizations concerning a policy or state of affairs,' then the decision is legislative. If the facts used in the decisionmaking are more specific, such as those that relate to particular individuals or situations, then the decision is administrative." (cleaned up)).

But these factors are just guideposts. The underlying standard to be applied is that "a legislative act is characterized by having a *policymaking* function *and general application*." *Brown*, 960 F.2d at 1011 (emphasis added); *see also Woods v. Gamel*, 132 F.3d 1417, 1420 (11th Cir. 1998) (same); *Hughes*, 948 F.2d at 921 ("If the action involves *establishment of a general policy*, it is legislative; if the action singles out specific individuals and affects them differently from others, it is administrative." (cleaned up; emphasis added)). As this Court clarified, "generally, absolute

35

immunity applies to prospective, legislative-type rules that have general application." *Bryant v. Jones*, 575 F.3d 1281, 1306 (11th Cir. 2009) (cleaned up); s*ee also Yeldell*, 956 F.2d at 1063 ("[P]olicy-making power" is "the cornerstone of legislative activity.").

## B.    The Decision to Remove a Particular Book from School Libraries is Administrative.

Applying the above standard to the Board's book removal decisions under Policy 4.06 shows those decisions were administrative.

As the Board itself admits, the decisions at issue are "[d]ecisions by the Board *made under* [Policy 4.06]." Def. Br. at 6 (emphasis added). That is, in the words of *Crymes*, *Smith*, and *Fuller*, the Board's action constituted the "application of existing policies"—in this case, the Board's Policy 4.06—to a specific set of facts—the specific books at issue based on the content of each book. Policy 4.06 itself provided that "[c]hallenged materials may be removed from use only after the following procedures have been completed in sequence." D.E. 27 Ex. 1 at 11. The Board describes how it "implement[ed] and effectuat[ed]" the policy through the votes at issue, Def. Br. at 41, with each Board member voting based on how the factors from the Policy applied to each book, *id.* at 42. In the Board's own words, "*the [Board's] decisions] resulted from the application of a generally applicable [policy]*" to "*individual books*." *Id.* at 50 (brackets in original; emphasis added). That alone should be dispositive.

36

The Board's votes to remove specific books was not "policymaking and of general application," *Woods*, 132 F.3d at 1420; *Brown*, 960 F.2d at 1011, and they most certainly did not establish "prospective, legislative-type rules that have general application." *Bryant*, 575 F.3d at 1306. Notably, the Board fails to identify any policy of general application that resulted from the votes.

A policy sets forth "the general principles by which a government is guided in its management of public affairs." Black's Law Dictionary 1157 ("policy") (6th ed. 1990). Policy 4.06 established the procedures and criteria for the Board's handling of challenges to library books. Whereas the Board's enactment of Policy 4.06 might be considered legislative, the Board's votes on whether to remove individual books from libraries simply applied Policy 4.06 to specific books. Those votes provided no "general principles" by which the Board would be "guided in its management of public affairs." They provided no criteria or rule of decision to apply in the future to other challenged books. The votes did not "make policy" and they do not have "general application." *Woods*, 132 F.3d at 1420; *Brown*, 960 F.2d at 1011.

The factors identified in *Crymes* further support this conclusion. "[T]he facts utilized in making [the Board's] decision[s] [were] specific, rather than general, in nature," and the "decision[s] impact[ed] specific [books]." *Crymes*, 923 F.2d at 1485; *Smith*, 45 F.3d at 406. The Board based its decisions on "all evidence and

37

materials presented to the district materials review committee" *about a specific book*, as well as public comment on that book, and then applied the factors set forth in Policy 4.06 and decided whether to keep or remove the book. Def. Br. at 41. The decision was based on specific facts and only applied to the specific books at issue.[11]

This framework helps elucidate many of this Court's opinions. For example, adopting a generally applicable rule regarding building or a zoning ordinance is legislative because it makes a policy that can be generally applied prospectively. *Brown*, 960 F.2d at 1012; *Corn v. City of Lauderdale Lakes*, 997 F.2d 1369, 1392 (11th Cir. 1993). But granting or denying a zoning permit is administrative because it constitutes application of a general rule to a specific set of facts. *Crymes*, 923 F.2d at 1482; *Corn*, 997 F.2d at 1392.[12] Similarly, adopting a budget that eliminates a department is legislative because it makes policy about how to expend limited resources that will be applied prospectively. *Bryant*, 575 F.3d at 1306-07; *Woods*, 132 F.3d at 1420. But deciding to terminate or not hire a particular individual is administrative, because it constitutes the application of existing policy—the budget

---

[11] Under Policy 4.06, book challenges are first routed to a review committee to "read the material, evaluate it, and render a decision" on whether to remove the book. Def. Br. at 41. If there is no appeal, the committee's decision is final. It is only if the book challenger appeals that the Board gets involved. *Id.* Where there is no appeal, the Board does not explain how it could delegate its allegedly legislative function to the review committee, or, alternatively, how it could be that the committee's action is administrative but the Board's is not.

[12] *Corn* involved both a rezoning ordinance (held to be legislative) and a permitting decision (held to be administrative).

to have a position—to a specific applicant or employee. *Smith*, 45 F.3d at 406; *Yeldell*, 956 F.2d at 1062-63. And as the District Court correctly concluded, the book removal decisions at issue here are "more akin to a permitting or employment termination decision" than to "a rezoning or budgeting decision." D.E. 155 at 6.

### C.    The Board's Arguments to the Contrary Are Unavailing.

The Board's attempts to avoid these conclusions are poorly reasoned and incorrect. The Board does not set forth any legal framework to apply. Instead, it cherry-picks phrases from a variety of cases to cobble together factors allegedly supporting its position. *See generally* Def. Br. at 41-54. The Board does not explain how its decisions constituted policymaking, what policy they made, or how those policies have general application in the future.

### 1.    The Board's Hodgepodge 'Factors' Fail.

Furtherance of Duties. The fact that the Board's actions were allegedly taken "in furtherance of their duties" is irrelevant. *Id*. at 41 (*misquoting Hernandez v. City of Lafayette*, 643 F.2d 1188, 1193 (5th Cir. Unit A 1981)).  *Hernandez* does not hold that *any* action taken in "in furtherance" of a legislator's duties is a legislative act. The misquoted statement related to the court's holding that legislative immunity applies to local officials, not to the scope of that immunity. Indeed, in the very next paragraph the court states: "Having decided that local legislators are entitled to absolute immunity . . . for conduct *while acting in a legislative capacity*, we now

39

turn to the specific question raised here"—whether a mayor's veto constitutes a legislative act. *Id.* at 1193 (emphasis added).

Nor would the Board's proposed test make any sense, as such an approach would cloak all but illegitimate conduct with immunity. *See Israel v. DeSantis*, 4:19cv576, 2020 WL 2129450, at *8 (N.D. Fla. May 5, 2020) ("[I]t is not sufficient to confer legislative immunity that the act in question be one the legislature is constitutionally empowered to undertake, or legislatures would be immune from any lawsuit other than a quo warranto-style challenge to an obviously illegal act."). Many of this Court's cases holding certain acts to be administrative involved conduct in furtherance of duty. *See, e.g.*, *Smith*, 45 F.3d at 406 (decision not to reappoint clerk); *Corn*, 997 F.2d at 1393 (denying approval of site plan); *Yeldell*, 956 F.2d at 1062-62 (hiring and firing decisions); *Crymes*, 923 F.2d at 1486 (vote to deny development permit).

<u>Discretion.</u> That the Board members "were not bound in how they individually were required to vote," Def. Br. at 42, is likewise irrelevant. Indeed, it would be odd and meaningless to conduct a vote where the voters were "required to vote" in a particular way. More fundamentally, Defendant fails to offer any support for the notion that exercising discretion is a meaningful marker of legislative as opposed to administrative action. *Bogan v. Scott-Harris*, on which the Board relies, refers to a "discretionary, *policymaking* decision" in discussing what constitutes a

legislative act. 523 U.S. 44, 55 (1998) (emphasis added). It does not suggest, let alone hold, that exercise of discretion is a distinct marker of legislative action.

Nor could that be the test—or even a helpful factor to consider—as numerous acts that this Court has found administrative likewise require an exercise of discretion. *Smith*, 45 F.3d at 406 (decision not to reappoint clerk); *Corn*, 997 F.2d at 1393 (denying approval of site plan); *Yeldell*, 956 F.2d at 1062-62 (hiring and firing decisions); *Crymes*, 923 F.2d at 1486 (vote to deny development permit).

Budgets. The budgetary decisions the Board relies upon are readily distinguishable. Def. Br. at 42-43. This Court has recognized that budget decisions are quintessentially "policymaking of general application" because budgets set prospective spending priorities that will affect all of a county's residents. *Woods*, 132 F.3d at 1420. The Board's contention that the decisions to remove books from school libraries "embodies the Board's expression by weighing various priorities before acting" is an apparent attempt to render such decisions akin to budgetary ones. But there is nothing about deciding to remove a book from school libraries due to its content that implicates competing priorities for a fixed set of resources.

Line-Drawing. The Board also alleges that it engaged in "line-drawing" in voting to remove these books, Def. Br. at 43, but fails to acknowledge that this Court used that term as a synonym for "policy-making decision[s] of a general scope." *Yeldell*, 956 F.2d at 1062-63 ("Legislative acts are those which involve policy-

41

making decision of a general scope or, to put it another way, legislation involves line-drawing."). As the District Court correctly noted, "[t]he fact that school board members must exercise discretion, engage in 'line-drawing,' and make 'policy judgments' when deciding whether a particular book is educationally suitable, grade-level appropriate, etc. does not change the fact that they are applying policy, not formulating it, when doing so." D.E. 155 at 6.

Voting. Similarly, voting is not dispositive of whether a decision is legislative or administrative. Def. Br. at 43. This Court has "expressly rejected the argument that the act of voting, in itself, constitutes legislative action giving rise to immunity." *Smith*, 45 F.3d at 406; *see also Woods*, 132 F.3d at 1420 ("[V]oting is not automatically a legislative act."); *Crymes*, 923 F.2d at 1485. It is true that legislative acts are often undertaken via a vote. But that is equally true of administrative acts taken by multimember bodies. *See, e.g., Smith*, 45 F.3d at 404, 406 (vote to not reassign clerk was administrative); *Corn*, 997 F.2d at 1384, 1392-93 (vote to not approve site plan contrary to recommendation of zoning board was not legislative); *Crymes*, 923 F.2d at 1484, 1485-86 (vote affirming denial of development permit was not legislative).[13]

---

[13] In arguing that voting is critical, the Board relies almost exclusively on cases pre-dating *Crymes* and the other cases cited above. Def. Br. at 43-44 (citing *DeSisto Coll., Inc. v Line*, 888 F.2d 755, 765 (11th Cir. 1989); *Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 829 (11th Cir. 1982); *Hudgins v. City of Ashburn*, 890 F.2d 396, 406 n.20 (11th Cir, 1989); *Healy v. Town of Pembroke Park*, 831 F.2d 989, 993

## 2. *Crymes* Is Binding Precedent.

Clearly recognizing that the test set forth in *Crymes* and later cases is fatal to its position, the Board seeks to minimize its importance. Def. Br. at 46 (*Crymes* does not set the standard "by which all legislative actions must be measured" and is "not the dispositive test the district court made it out to be."). But *Crymes* is perfectly good law that is binding on this Court. Moreover, it has been cited 17 times in other Eleventh Circuit cases, with *ten* of those citations involving the question of whether governmental conduct was a legislative act. *See Fuller*, 2022 WL 333234, at *3; *Curling v. Sec'y of Ga.*, 761 F. App'x 927, 934 (11th Cir. 2019); *Kentner v. City of Sanibel*, 750 F.3d 1274, 1280 (11th Cir. 2014); *Lewis v. Brown*, 409 F.3d 1271, 1274 (11th Cir. 2005); *Woods*, 132 F.3d at 1420; *DeKalb Stone, Inc. v. County of DeKalb, Ga.*, 106 F.3d 956, 959(11th Cir. 1997); *Smith*, 45 F.3d at 406; *Corn*, 997 F.2d at 1392; *Brown*, 960 F.2d at 1011; *Ellis*, 981 F.2d at 1190.

The Board's citation to *75 Acres, LLC v. Miami-Dade County*, 338 F.3d 1288, 1297 (11th Cir. 2003), for the proposition that this circuit has not articulated a test for distinguishing legislative from administrative actions, is misplaced. Def. Br. at 47. *75 Acres* addressed the question of whether an act was legislative or *adjudicative* for purposes of a *due process* claim; it did not address the question at issue here—

_____

(11th Cir. 1987)).

whether an act is legislative or administrative for determination of immunity or privilege. *Id.* at 1293 ("[T]he distinction between legislative action and adjudicative action . . . guides our procedural due process analysis."). *Crymes* remains good and binding law.

The Board fares no better on the merits. First, the Board seems to read the reference in *Crymes* to "administrative application of existing policies" to mean that only mechanical, non-discretionary decisions constitute administrative acts. Def. Br. at 47 ("The Board was not mechanically applying its policies . . . ."). But the use of the word "administrative" does not mean mechanical. It is intended to refer to an executive, as opposed to legislative, function. "In public law, the administration of government means the practical management and direction of the executive department . . . ." Black's Law Dictionary 44 ("administration") (6th ed. 1990). And "administrative acts" are "[t]hose acts which are necessary to be done to carry out legislative policies and purposes already declared by the legislative body . . . ." *Id.* at 45 ("administrative acts"). So *Crymes'* reference to the "administrative application of existing policies" comfortably includes the application of such policies even when discretion is involved, which it often is.

The fact that the Board may have applied its policy differently than other school districts, Def. Br. at 47-48, is also completely irrelevant to the question of whether the Board's votes created a policy of general application. And the Board's

reference to the Magistrate Judge's comment that deciding what materials should be used in schools is a "policy matter" for school boards to decide, *id.* at 48, fails to appreciate the distinction between the application of policy (what happened here; administrative) and the making of policy (what the Board did in passing Policy 4.06; legislative). There is no dispute that the decision to remove books from libraries is a "policy matter"—to the extent it is an expression of the Board's policy that these specific books should be removed from school libraries. But in that sense, every application of policy to specific facts is a "policy matter." That does not convert the Board's actions removing specific books into "policy*making*."

The Board similarly misapprehends the question of the impact of its decisions to remove books from libraries. Def. Br. at 49-51. The fact that the decision applies to all schools in the district does not make the decision one that impacts "the general population," *Crymes*, 923 F.2d at 1485; *Smith*, 45 F.3d at 406, or a policy "of general application," *Woods*, 132 F.3d at 1420; *Brown*, 960 F.2d at 1011. These phrases refer to policies that can have broader application in the future. Even admittedly administrative decisions such as firing a school principal or superintendent or denying a zoning permit impact parties beyond those directly subject to the decision (e.g., teachers and students in a school or schools; neighbors and other residents of a city). But the question is not whether more than one individual or anyone not a party to the lawsuit is impacted by a particular decision, but whether the policy

45

adopted has widespread *application* beyond the specific facts at issue. *See Israel*, 2020 WL 2129450, at *9 ("[A]llowing the existence of such attenuated secondary and tertiary effects to confer immunity would render the immunity analysis illusory, as virtually any action by a legislature or legislator would have such effects to some degree.").

As the Fifth Circuit explained in explicating its similar standard, "if the action involves establishment of a *general policy*, it is legislative; if the action singles out specific individuals and affects them differently from others, it is administrative." *Hughes*, 948 F.2d at 921(emphasis added) (cleaned up). Here, the Board's votes did not establish a "general policy," even though the removed books were removed from all school libraries; rather, the votes singled out specific books and affected them differently. Or, as the district court held, the Board's votes "involve the case-by-case *application* of the standards in state law and school board policy to a specific book, not the *formulation* of general standards that apply to all books." D.E. 155 at 6 (emphasis in original).

The Board's reliance on *Baytree of Inverrary Realty Partners v. City of Lauderdale*, 873 F.2d 1407 (11th Cir. 1989), reflects a fundamental misreading. Def. Br. at 50. *Baytree*—which predates *Crymes* and the numerous cases that rely on it— held that a decision whether to amend a zoning *ordinance* (albeit one that impacted only a single property) was a legislative act, and relied on cases holding that such

ordinance amendments are legislative. 873 F.2d at 1408-09. In subsequent cases, this Court has repeatedly held that decisions to adopt or reject zoning *ordinances* are legislative, whereas decisions on specific zoning *permit applications* (*i.e.*, application of the zoning ordinance to a specific set of facts) are administrative. *See, e.g.*, *Corn*, 997 F.2d at 1392-93; *Fuller*, 2022 WL 333234, at *3. If anything, these cases further support that the number of people or properties (or schools) impacted is not the critical factor; rather, courts look to whether the act in question adopts a general rule, or applies such a rule to a specific set of facts.

The Board's citation to *Smith*, itself citing *Crymes*, Def. Br. at 50, is puzzling. As the Board correctly notes, the citation is to dicta in *Crymes* stating that a decision to remove a particular road from a list of truck routes was "probably legislative in nature." *Crymes*, 923 F.2d at 1485. This is not surprising, as that decision—although it applied to a single road—was a policymaking decision of general applicability in future permitting decisions. That is, the status of the road at issue—truck route or not a truck route—is a policy to be applied in making individualized permitting decisions which may depend on the availability of truck routes. Once again, the principle is the same regardless of whether one road or many roads are at issue.[14]

---

[14] The Board's reliance on *75 Acres* is similarly misplaced. Def. Br. at 50. The *75 Acres* court's determination that the statute at issue was one of general applicability was not because the statute impacted everyone in the county; it was because the statute provided a rule of decision for determining whether a building moratorium would apply and that rule of decision applied county-wide. 338 F.3d at 1297.

47

Fundamentally, the Board misapprehends the applicable law. The point is not to count how many of *Crymes'* "factors" favor one outcome or another. Def. Br. at 51. Rather, the question is which part of the applicable legal standard applies—is the act one of policy*making* or application of an existing policy? Here, the Board's decisions to remove specific books from school libraries reflects the application of policy, and not the making of policy.

### 3.    The Board misunderstands *Ellis*.

The Board's final attempt to avoid the inevitable conclusion that the Board's decisions under its Policy 4.06 to remove specific books from school libraries is administrative is to hang its hat on a misreading of *Ellis*. Def. Br. at 51-54.

Properly understood, *Ellis* is not inconsistent with the general principles discussed above. The key to understanding *Ellis* is that it involved the legislative function of conducting an *investigation*, as opposed to legislating. Thus, *Ellis* concluded that the county commissioners and their attorney were entitled to legislative privilege because they were "engaged in their legislative function" when they conducted an investigation into registered voters in the county, including the Ellis plaintiffs. 981 F.2d at 1191-92. That the *Ellis* court was focused on investigative powers is clear both from the facts of the case and from the court's analysis.

*Ellis* involved implementation of a consent decree concerning voting in the

48

county. *Id.* at 1187. "Resulting from the *investigation* into voter eligibility . . . the names of 6,000 voters who needed to verify their qualifications to vote in Coffee County were published in the local newspaper. The published list included the four Ellises." *Id.* at 1189 (emphasis added). *See also id.* at 1191 ("the commissioners investigated the residence of electors"), 1193 ( "the commission determined [voter eligibility] by investigation"). It was thus the exercise of the commissioners' investigative functions that led to the ultimate determination that the Ellis plaintiffs were among a large group of ineligible voters.

And indeed, *Ellis* is analytically grounded in the notion that conducting investigations is an appropriate legislative function. The only time that *Ellis* uses the word "policy" or "policymaking" is in support of its preliminary conclusion that the delineation of voting precinct lines is a legitimate legislative function. *Id.* at 1190 (*citing Crymes*, 923 F.2d at 1485). After establishing the proper legislative purpose of drawing precinct lines, the court concluded that "*[g]iven these statutory guidelines* and their mandate under the consent decree, the Coffee County Commissioners clearly were performing their legislative function when they *investigated* the voting eligibility of the listed electors on the county precinct list . . . ." *Id.* (emphasis added).

In support of this conclusion, *Ellis* cited *McGrain v. Daugherty*, a Supreme Court case that determined that Congress has the power to compel witnesses to

appear before it although "there is no provision [in the Constitution] expressly investing either house with power to make investigations and exact testimony." 273 U.S. 135, 161, 174 (1927). *See Ellis*, 981 F.2d at 1190 (citing *McGrain*); *see also McGrain*, 273 U.S. at 174 ("We are of opinion that the power of inquiry . . . is an essential and appropriate auxiliary to the legislative function."); *Ellis*, 981 F.2d at 1191 (*citing Yeldell*, 956 F.2d at 1062, for the proposition that "[p]reparing committee reports, and participating in committee *investigations* and proceedings are generally deemed legislative and, therefore, protected by the doctrine of legislative immunity" (emphasis added)).

*Ellis'*s repeat citations to *Tenney v. Brandhove*, 341 U.S. 367 (1951)—which also involved Congress's investigative function and held that "[i]nvestigations . . . are an established part of representative government," *id.* at 377—also makes sense in this light. *Ellis*, 981 F.2d at 1190, 1191, 1193 (citing to *Tenney* for different propositions). *See also Hernandez*, 643 F.2d at 1196 (citing *Tenney* for conclusion that "conducting an investigation" is a "legitimate legislative function").

Both the District Court's statement that its conclusion is hard to square with *Ellis*, D.E. 155 at 6 n.3, and the Board's argument that *Ellis* supports its position, Def. Br. at 51-54, are mistaken.[15] *Ellis* is neither inconsistent with the District

---

[15] The Board's description of *Ellis* as concerning "the voting status of a family," Def. Br. at 51, ignores the much broader scope of the investigation at issue in that case, which identified some 6,000 ineligible voters. *Ellis*, 981 F.2d at 1188, 1191.

Court's conclusion nor supportive of the Board's contention that the acts here at issue are legislative. *Ellis* is simply inapposite, as it did not address the question of whether the actions there at issue concerned legislative versus administrative acts. Indeed, the word "administrative" appears nowhere in the opinion, notwithstanding its citations to both *Crymes* and *Brown*. That is because *Ellis* dealt solely with the question of whether the exercise of a government agency's *investigative* function qualified for legislative immunity. Perhaps for this reason, unlike *Crymes, Ellis* has *never* been cited by this Court in deciding what constitutes a legislative versus administrative act.[16]

* * *

For all of these reasons, the District Court was correct in determining that the Board's votes to remove specific books from school libraries were administrative acts.

---

[16] *See Gomez v. City of Miami*, No. 23-13364, 2024 WL 4369605, at *1 (11th Cir. Oct. 2, 2024) (denial of immunity is appealable); *Code Revision Comm'n for Gen. Assembly of Ga. v. Public.Resource.Org, Inc.*, 906 F.3d 1229, 1245 (legislative aides entitled to immunity); *Bryant*, 575 F.3d at 1303 n.29, 1304 (legislative immunity applies to local legislators and their adjuncts); *Scott v. Taylor*, 405 F.3d 1251, 1253 n.2, 1256 n.7 (11th Cir. 2005) (immunity decisions are appealable and improper motives are irrelevant); *Smith v. Shook*, 237 F.3d 1322, 1325 (11th Cir. 2001) (grant of immunity is reviewed de novo); *Macuba v. Deboer*, 193 F.3d 1316, 1302 (11th Cir. 1999) (immunity claims are appealable); *Mastroianni v. Bowers*, 173 F.3d 1363, 1366 (11th Cir. 1999) (same); *Woods*, 132 F.3d at 1419 n.4 (good faith of legislator is irrelevant to immunity decision). These are the only Eleventh Circuit cases to ever cite *Ellis*.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this appeal for lack of jurisdiction, or in the alternative, affirm the District Court's Amended Order denying the Board's motion for a protective order.

Dated: March 7, 2025

*/s/ Lynn B. Oberlander*

Lynn B. Oberlander
**BALLARD SPAHR LLP**
1675 Broadway, 19th Floor
New York, NY 10019-5820
Telephone: 212.223.0200
Facsimile: 212.223.1942

Matthew G. Kussmaul*
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: 215.864.8500
Facsimile: 215.864.8999

Shalini Goel Agarwal
Ori Lev*
**PROTECT DEMOCRACY PROJECT**
2020 Pennsylvania Ave. NW, Suite 163
Washington, DC 20006
Telephone: 202.579.4582
Facsimile: 929.777.8428

*Admitted pro hac vice*

*Attorneys for Plaintiffs-Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that this Brief complies with the type-volume limitations set forth in Federal Rule of Appellate Procedure 32(a)(7)(A) and Eleventh Circuit Rule 32-4 because it contains 12,816 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Rule 32-4.

The undersigned further certifies that this Brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface of Times New Roman 14-point font.

*/s/ Lynn B. Oberlander*
Lynn B. Oberlander

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2025, I electronically filed the foregoing Appellees' Brief in Response to Appellant's Initial Brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Lynn B. Oberlander*
Lynn B. Oberlander